UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 25cr10080 |
| | ) |
| v. | ) Violation: |
| | ) |
| CHRISTIAN DECRISTOFARO, | ) Count One: Wire Fraud |
| | ) (18 U.S.C. § 1343) |
| Defendant | ) |
| | ) Forfeiture Allegation: |
| | ) (18 U.S.C. § 981(a)(1)(C) and |
| | ) 28 U.S.C. § 2461) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. The defendant, CHRISTIAN DECRISTOFARO, lived in Newburyport, Massachusetts.

2. DECRISTOFARO was a licensed plumber who owned and operated Prometheus Plumbing LLC, a Massachusetts plumbing company ("Prometheus Plumbing"). DECRISTOFARO also controlled NE Premier Home Services LLC, a Massachusetts home repair company ("NE Premier").

3. "Victim 1" was a company headquartered in Norwalk, Connecticut that provided home repair insurance plans—which provide supplemental coverage for home emergencies not covered by traditional homeowner's insurance—to homeowners across the United States. When a policyholder experienced a home emergency, such as a gas-line leak or a water heater malfunction, the policyholder contacted Victim 1, which hired a licensed and insured local contractor to fix the

homeowner's issue. After the contractor completed the job, Victim 1 paid the contractor for its work.

## The Scheme to Defraud

4. From in or around October 2020 through in or around June 2023, DECRISTOFARO defrauded Victim 1 by causing it to pay NE Premier more than $2 million for work that NE Premier falsely claimed to have performed.

5. As part of the scheme to defraud, DECRISTOFARO used false identities to enroll fake homeowners in Victim 1's insurance plans; falsely reported home emergencies to Victim 1 on behalf of these purported homeowners; and requested that NE Premier be assigned to perform and be paid for the repairs, which were never performed (because there were no home emergencies).

6. Specifically, on or about October 22, 2020, DECRISTOFARO caused NE Premier to enter into a contractor agreement with Victim 1.

7. Between approximately November 2020 and June 2023, DECRISTOFARO used false identities and two debit cards that he controlled to enroll more than 160 purported homeowners as insureds with Victim 1.

8. DECRISTOFARO then used phone numbers and email addresses that he controlled to impersonate the purported homeowners, to report non-existent home emergencies to Victim 1, and to request that Victim 1 assign NE Premier to perform the purportedly necessary repairs.

9. DECRISTOFARO then caused NE Premier to accept Victim 1's referrals to perform the purportedly necessary repairs.

*Policyholder 1*

10. As one example of the scheme to defraud, on or about March 4, 2023, DECRISTOFARO impersonated Policyholder 1, a purported resident of Boston, Massachusetts, to enroll Policyholder 1 for three kinds of home repair insurance coverage with Victim 1. In fact, Policyholder 1 was a fictitious person who did not own or live in the Boston residence.

11. In enrolling Policyholder 1, DECRISTOFARO used an email address and phone number that he also used to enroll 21 other purported Victim 1 policyholders, each of whom he reported as living at different addresses across Massachusetts. DECRISTOFARO also used a TD Bank debit card that he controlled to pay the premiums on Policyholder 1's policies.

12. On or about May 16, 2023, DECRISTOFARO impersonated Policyholder 1 in a phone call to Victim 1, falsely reported a gas-line leak at the Boston residence, and requested that Victim 1 send NE Premier to repair the purported leak. As a result of the call, Victim 1 assigned the purported repair job to NE Premier.

13. On or about May 23, 2023, DECRISTOFARO impersonated Policyholder 1 in another phone call to Victim 1, made from a cell phone that he controlled. In that call, DECRISTOFARO (as Policyholder 1) falsely reported that a second repair was necessary to complete the purported job referenced in paragraph 12 above, and secured Victim 1's approval to have NE Premier perform the second repair. Victim 1 later paid NE Premier approximately $2,234 for the second (non-existent) repair.

14. In total, DECRISTOFARO caused Victim 1 to assign NE Premier to complete approximately 1,556 non-existent home repairs, and to pay NE Premier approximately $2,196,323 for those purported repairs. DECRISTOFARO spent these funds on, among other things, international travel and luxury jewelry and clothing items.

<u>COUNT ONE</u>
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney charges:

15.   The United States Attorney re-alleges and incorporates by reference paragraphs 1-14 of this Information.

16.   On or about March 4, 2023, in the District of Massachusetts and elsewhere, the defendant,

CHRISTIAN DECRISTOFARO,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit: an electronic debit card payment to Victim 1 on behalf of Policyholder 1 in the approximate amount of $6.49, made from a TD Bank account controlled by DECRISTOFARO, for the purchase of home repair insurance coverage as referenced in paragraph 10 above.

All in violation of Title 18, United State Code, Section 1343.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

17. Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One of this Information, the defendant,

CHRISTIAN DECRISTOFARO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following asset:

a. $2,196,323 in United States currency, to be entered in the form of a forfeiture money judgment.

18. If any of the property described in paragraph 17 above as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 17 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

LEAH B. FOLEY<br>
UNITED STATES ATTORNEY

By: *Leslie A. Wright*
LESLIE A. WRIGHT
MEGHAN C. CLEARY
Assistant United States Attorneys

Date: February 28, 2025